**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
ERIE DIVISION**

| | | |
|---|---|---|
| ANTHONY GUNN | ) | |
| | ) | |
| Plaintiff, | ) | No.  1:23-cv-225 |
| | ) | |
| v. | ) | JURY TRIAL DEMANDED |
| | ) | |
| VISIONQUEST NATIONAL LTD., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Anthony Gunn ("Plaintiff"), by and through his attorneys Fegan Scott LLC, files his complaint against Defendant VisionQuest National Ltd. ("VisionQuest" or "Defendant"), alleging as follows:

### I.    INTRODUCTION

1.    Residential juvenile care facilities have a duty to protect the safety and well-being of the children committed to their care to further the juvenile justice system's goal of rehabilitation by ensuring that the children learn and grow to become contributing and productive members of society.

2.    Defendant owned and operated the now-closed VisionQuest residential facility located in Franklin, Pennsylvania for youth adjudicated delinquents. Defendant knew or should have known that the staff members whom they employed, who had unfettered access to the vulnerable children committed to VisionQuest's care, preyed upon and sexually, physically, and emotionally exploited and abused those children.

3.    Plaintiff Anthony Gunn, who was 14 years of age at the time and under the legal age of consent, was placed at VisionQuest and endured sexual and physical abuse at the hands of VisionQuest staff when he was entrusted to Defendant's care.

4.      As a result of this sexual and physical abuse, to this day, Plaintiff suffers from a host of mental health issues including PTSD, anxiety, depression, panic attacks, nightmares, suicide attempts, and drug abuse, as well as continuing involvement in the criminal justice system.

## II.    PARTIES

5.      Plaintiff Anthony Gunn is a resident of Rockview, Centre County, Pennsylvania, and citizen of the United States.

6.      Defendant VisionQuest National, Ltd. is an Arizona corporation with its principal place of business at 4400 East Broadway Boulevard, Suite 501, Tucson, Arizona 85711.

7.      VisionQuest is registered to do business in Pennsylvania, and at all times relevant herein, owned and operated a facility located at 555 South Penn Road, Franklin, Venango County, Pennsylvania 16323.

## III.    JURISDICTION AND VENUE

8.      This Court has jurisdiction pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000 exclusive of interest and costs.

9.      Venue is proper in this District under 28 U.S.C. § 1391(b) because and the events and/or omissions giving rise to this action occurred in this District in connection with a juvenile residential facility that Defendant owned and operated in this District. Defendant is therefore subject to personal jurisdiction in this District.

## IV.    FACTUAL BACKGROUND

**A.    VisionQuest was established to help at-risk youth become responsible and productive members of their communities, not to give pedophiles and abusers easy access to vulnerable children.**

10.     Defendant operates in six states and claims it "is a national comprehensive child,

youth and family services organization committed to providing successful and effective services while adhering to the highest professional standards."[1] VisionQuest states that all children "deserve an opportunity for a good life."[2]

11.    One of VisionQuest's now-closed facilities was located at 555 S. Penn Road, Franklin, Venango County, Pennsylvania 16323.

12.    Defendant boasts 50 years' experience and claims that "Children and Youth are safe, respected and honored."  VisionQuest specifically claims its program utilizes "'best practices' for youth in trouble."[3]

13.    Defendant claims it works with the Commonwealth of Pennsylvania "to provide alternatives to detention and help previously incarcerated youth transition back into society,"[4] but this is far from the reality.

**B.    Mr. Gunn was placed at VisionQuest for only a month, where he was repeatedly physically and sexually abused.**

14.    In July or August 2008, at the age of 14, Mr. Gunn was adjudicated delinquent by the Court of Common Pleas, Erie County, and committed to VisionQuest's Franklin, Pennsylvania location. Mr. Gunn was at VisionQuest for approximately 30 days.

15.    While there, he was physically and sexually abused by employees, staff members, and others working at VisionQuest under its supervision, authority, and control. He was also physically abused by VisionQuest students at the urging of VisionQuest employees and staff members.

16.    One incident occurred when Mr. Gunn was throwing a football from bed to bed

---

[1] https://www.vq.com/about-us (last visited 7/28/23).
[2] *Id.*
[3] https://www.vq.com/about-us#Scroll (last visited 7/28/23).
[4] https://www.vq.com/by-state/pennsylvania (last visited 7/28/23).

with another student named McDowell when they both should have been sleeping. A staff member called "Captain" (real name unknown) caught them. As a punishment, he made both Plaintiff and McDowell strip down to their underwear and stand outside all night. At some point, it began to rain and Plaintiff and McDowell were forced to stand outside in their underwear in the pouring rain.

17.    Plaintiff does not recall or has suppressed the name of Captain, but he was a dark-skinned Black man of average height with a stern and strict, military-like bearing.

18.    While at VisionQuest, Mr. Gunn witnessed other students required to stand outside all night long.

19.    Because Plaintiff was forced to stand outside in the pouring rain as punishment, he became sick and was sent to the infirmary at VisionQuest which is, based upon information and belief, staffed by medical professionals who were employed by VisionQuest, agents of VisionQuest, or under VisionQuest's supervision, authority, and control.

20.    At the infirmary, he encountered Nurse Becky (last name unknown). Plaintiff never knew, does not recall, or has suppressed the last name of Nurse Becky, but she was a woman in her mid- to late-twenties, white, short with an average build, brown hair, and always dressed in medical scrubs.

21.    Nurse Becky's examination of Plaintiff began as normal; she listened to his heart with a stethoscope and looked in his ears with an otoscope. Then the examination became sexual when Nurse Becky began sexually assaulting him by cupping his testicles while flirting with him and asking him personal questions, such as about girlfriends.

22.    Plaintiff was called to the infirmary for a follow-up visit and based upon information and belief, Plaintiff believes that Nurse Becky called him there. While there,

Plaintiff was again "examined" by Nurse Becky in the same way. She asked Plaintiff about girlfriends and hinted that he was sexually inexperienced, saying "You don't have a girlfriend because you don't know what you're doing." Nurse Becky kissed Plaintiff and grabbed his penis and testicles.

23.     Either then or at a later time, Nurse Becky gave Plaintiff medical records, and a telephone number was written on the back of those papers, which was Nurse Becky's phone number for him to use when he was released from VisionQuest.

24.     Nurse Becky sexually assaulted Plaintiff several times thereafter. Nurse Becky allowed Plaintiff to fondle her breasts and she gave him oral sex on one occasion.

25.     When Plaintiff told Nurse Becky that he only had two weeks left at VisionQuest, she asked him to get an "extension" so she could continue her sexual assaults of him. She also promised that she would see him (as in "date") when he got out.

26.     In addition to being sexually abused by Nurse Becky, Plaintiff was also physically abused by students who were provoked by the VisionQuest employees and staff members, who would watch and laugh.

27.     Even though he was at VisionQuest for only 30 days, Plaintiff was involved in three such fights. One time Plaintiff went outside of the chain of command to report a matter. As a result, a staff member was angry because Plaintiff "jumped the chain of command." When Plaintiff went into the bathroom, another student beat him up at the behest of the staff member.

28.     That student was called an "enforcer," who was a student who would latch on to a staff member and would beat up other boys in exchange for candy and other favors from the staff member.

29.     The boy who beat up Plaintiff was big and bulky, and because Plaintiff was blind-

sided by the attack, he put his hands over his head and slid down the wall into a ball. The boy kept punching Plaintiff, and Plaintiff was injured as a result of the attack but did not report it for fear of further physical abuse.

30.    The staff member who ran Plaintiff's unit was named Mark or Martin (last name unknown). Plaintiff either did not know, cannot recall, or has suppressed the correct name of Mark or Martin (for purposes of this Complaint, "Mark"), but he was a dark-skinned Black man.

31.    The second fight occurred when Plaintiff was playing cards with a new trainee staff member as his partner. Another student, who was partners with Mark, was not shuffling the cards, and Plaintiff commented on it. The dispute between the boys escalated into a fight. The staff members watched while Mark's partner punched and kicked Plaintiff as he lay balled up on the floor. The VisionQuest employees and staff members did not intervene even though they were present and watched the events unfold. Plaintiff was injured by this attack.

32.    The third fight in which Plaintiff was involved was also instigated by the VisionQuest staff. Several staff members were outside because they were smoking cigarettes. Plaintiff and student McDowell (mentioned above) were also outside, horsing around and "slap boxing," which is pretend boxing. Plaintiff slipped on some rocks, fell, and got a gash on his left eye. The staff members did not want to fill out an incident report because they would have to explain why they were outside (smoking cigarettes), and thus they did not let Plaintiff seek medical care. Plaintiff needed, but never received, stitches. To cover up his injury, Plaintiff had to stay in his unit for six days where food was brought to him. To this day, Plaintiff has a scar from this wound.

33.    As a result of this incident and the cover-up, the staff members were angry, and so they decided to punish Plaintiff. Two days before he left VisionQuest, the staff members forced

Plaintiff to fight a student named Reese from Philadelphia, who was a skilled boxer. Plaintiff was forced into a "ring" outside on the same rocks where he suffered his gash, surrounded by several staff members (including Mark), and forced to box Reese. Plaintiff got beat up and was seriously injured.

### C. Prior to the time of Mr. Gunn's placement at VisionQuest, Defendant knew or should have known that physical and sexual abuse was committed by VisionQuest employees.

34.     Prior to and during the time of Mr. Gunn's placement at VisionQuest in 2012, Defendant knew or should have known about problems of sexual and physical abuse being committed by its staff and employees of its residential facilities.

35.     In 1984, New Mexico cancelled VisionQuest's license to operate in that state, in part because of child abuse charges.[5]

36.     In November of 1987, the Rand Corporation completed a study supported by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention. The report was entitled, "The VisionQuest Program: an Evaluation."[6] The report memorialized VisionQuest's controversial physical "confrontations" by staff to deal with inappropriate behavior of the juveniles and several child-abuse complaints lodged against VisionQuest staff members.[7]

37.     Between 1995 and 1998, Defendant had 11 charges of abuse substantiated against its programs that included hiring a twice-convicted child rapist and a supervisor knocking a girl to the ground and holding her down by her throat.[8]

38.     In a March 13, 1998, article, Don Bailey, then-Pennsylvania auditor general who

---

[5] https://www.mcall.com/1988/03/13/embattled-program-has-a-friend-in-pennsylvania-pa-still-on-board-despite-questions/?clearUserState=true (last visited 7/31/23).
[6] https://www.rand.org/pubs/reports/R3445.html (last visited 7/31/23).
[7] *Id.,* p.vi.
[8] *See* https://www.phoenixnewtimes.com/news/business-az-usual-6421940 (last visited 7/31/23)

audited VisionQuest's 1984 finances stated, "VisionQuest has more of an interest in personal business than in what happens to the kids."[9] The article confirmed VisionQuest's controversial practices where "[s]taff members are often confrontational, shouting at youths nose to nose and sometimes grabbing them."[10]

39.     An August 6, 1998, article reported that physical restraint, and other forms of physical contact, are essential to Defendant's program. "Any recalcitrant teen who sits down and refuses to obey instructions can expect to be manhandled."[11]

40.     Students at Defendant's New Directions Shelter in North Philadelphia were indeed "man-handled." There, a staff member put a child "in a restraint" and took the youth out of the room, where the youth kicked a dent in the wall as he resisted.[12]

41.     In April 2013, investigators found that two staff members at that same facility cursed at the youths in their care, saying things like, "You're going to be nothing in life." Those workers were only admonished.[13]

42.     In August of 2013, inspectors found that eight staff members at that same facility had not been certified in CPR or first aid, and in 2014 and 2015, a staff member was working without child-abuse clearance.[14]

43.     Ultimately, in 2018, Defendant closed its Franklin, Pennsylvania location because the City of Philadelphia refused to place any other children there, citing safety concerns.[15]

---

[9] https://www.mcall.com/1988/03/13/embattled-program-has-a-friend-in-pennsylvania-pa-still-on-board-despite-questions/?clearUserState=true, *supra.*
[10] *Id.*
[11] https://www.phoenixnewtimes.com/news/business-az-usual-6421940, *supra.*
[12] https://www.inquirer.com/philly/news/visionquest-immigrant-children-philadelphia-shelter-abuse-20181026.html (last visited 7/31/23).
[13] *Id.*
[14] *Id.*
[15] https://www.venangoextra.com/visionquest-shuts-down (last visited 7/31/23).

**D.    As a result of the sexual abuse he suffered at VisionQuest, Mr. Gunn suffers from life-long mental health issues and continued involvement in the criminal justice system.**

44.    The sexual and physical abuse that Mr. Gunn suffered at VisionQuest has negatively and profoundly affected him.

45.    Prior to VisionQuest, Mr. Gunn suffered from ADHD. Since VisionQuest, he has been diagnosed with major depressive disorder, PTSD, anxiety, adjustment disorder, borderline personality disorder, bipolar disorder, and schizophrenia. He has been on various medications, including anti-psychotic medications, as a result of the abuse he suffered at VisionQuest. He takes various medications for his mental conditions to this day.

46.    As a result of the abuse he suffered at VisionQuest, Plaintiff does not respect authority. This has led to his continuing involvement in the criminal justice system, which he attributes directly to the abuse he suffered.

47.    The sexual and physical abuse Plaintiff suffered at VisionQuest has impacted his relationships with his parents and siblings. Since he has been incarcerated most of his life, he has not been able to develop close relationships with them. While he often talks to his family, he has not had the ability to have actual "in person" time with them. He also has not been able to discuss what happened to him. In addition, his intimate relationships to this day have always been difficult.

48.    While at VisionQuest, Plaintiff began to suffer from nightmares, night terrors, and night sweats. Today he still suffers from panic attacks and nightmares. His nightmares subsided for a time, but when this case came about, they resurfaced as he started reliving the abuse. Now, little noises make Plaintiff wake with a start, and he never feels 100% safe.

49.    Once he left VisionQuest, Plaintiff became a drug addict. Before VisionQuest, he tried drugs as a curiosity; afterwards, he sought out illicit drugs to get high and numb his pain.

50.     Plaintiff has also had three suicide attempts which he directly attributes to the abuse he suffered. One time he attempted to shoot himself but the gun jammed. Another time when he was arrested, he intentionally overdosed on heroin because he did not want to go back to prison. His heart stopped but he was revived.

51.     Mr. Gunn needs mental health counseling and treatment, but because he is incarcerated, he is not afforded adequate mental health care.

**E.      VisionQuest is liable for Nurse Becky's actions pursuant to the doctrine of respondeat superior.**

52.     Nurse Becky (last name unknown) was working and providing medical services at VisionQuest.

53.     At all relevant times, VisionQuest was charged with supervising and controlling its employees, staff members, and others working at VisionQuest under its supervision, authority, and control, including Nurse Becky and Martin.

54.     The wrongful acts of VisionQuest's employees, staff members, and others working at VisionQuest under its supervision, authority, and control, including Nurse Becky and Martin, were committed in the actual or apparent course and scope of their employment and/or authority with VisionQuest.

55.     VisionQuest's employees, staff members, and others working at VisionQuest under its supervision, authority, and control, including Nurse Becky and Martin, used the authority delegated to them to sexually abuse Plaintiff.

56.     Because the VisionQuest employees, staff members, and others working at VisionQuest under its supervision, authority, and control, including Nurse Becky and Martin, were agents of VisionQuest and served in a supervisory role, VisionQuest is liable for their abusive conduct under the doctrine of respondeat superior.

## V.    CAUSES OF ACTION

## COUNT I: NEGLIGENCE

57.    Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

58.    At all relevant times, Defendant owed Plaintiff a duty to maintain a safe environment with adequate protection, supervision, and care while Plaintiff was in Defendant's care and custody.

59.    Defendant, as well as its staff, employees, and others working at VisionQuest under its supervision, authority, and control, also had a duty to report child abuse if a reasonable belief that it occurred exists, as required by 55 Pa. C.S. § 3680, *et seq*.; 55 Pa. C.S. § 3800, *et seq*; and all other applicable child abuse reporting requirement laws related to mandatory abuse reporters and applicable to Defendant.

60.    Defendant also had duties to both protect Plaintiff and to control the acts of Defendant's employees, staff members, and others working at VisionQuest under its supervision, authority, and control. This is because of the special relationship between Defendant and Plaintiff, as a child deprived of his normal power of self-protection when committed to Defendant's residential juvenile care facility, and because of Defendant's special relationship with their employees, staff members, and others working at VisionQuest under its supervision, authority, and control, as the class of persons whose conduct needs to be controlled.

61.    Defendant breached these duties through its acts and omissions, including but not limited to:

  a.  allowing, authorizing, or turning a blind eye to a culture of sexual and physical abuse at VisionQuest;

  b.  failing to train and educate the employees, staff, and others working at VisionQuest under its supervision, authority, and control,  regarding

the identification and reporting of sexual and physical abuse;

c.  failing to instruct and train supervisors of the employees, staff, and others working at VisionQuest under its supervision, authority, and control, regarding circumstances indicating a high risk of sexual and physical abuse;

d.  failing to properly screen staff members, teachers, nurses, counselors, employees, agents, and servants before placing them in close contact with the young and vulnerable residents and students at VisionQuest;

e.  failing to adequately supervise staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

f.  failing to monitor staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

g.  failing to monitor Plaintiff's well-being while at VisionQuest so as to detect incidents of abuse;

h.  failing to properly investigate complaints of sexual, physical, and/or emotional abuse and/or other inappropriate behavior;

i.  failing to take adequate and appropriate measures after learning about repeated incidents of physical, sexual, and emotional abuse within VisionQuest;

j.  failing to report criminal activity, including child abuse, to appropriate law enforcement agencies;

k.  failing to establish, implement, and maintain proper and effective policies to prevent sexual, physical, and/or emotional abuse to the students and residents of VisionQuest;

l.  failing to establish, implement, and maintain proper and effective policies for adequate observation, management, oversight, and supervision of the staff and employees of VisionQuest; and

m.  failing to prevent serious and lasting psychological, physical, sexual, and emotional harm to Plaintiff while at VisionQuest.

62.    Defendant knew or should have known that its staff, employees, and others working at VisionQuest under its supervision, authority, and control, were not fit to be in the presence of juveniles over whom Defendant had custody and/or responsibility.

63.    Defendant is vicariously liable for the negligent and intentional acts of its staff, employees, and others working at VisionQuest under its supervision, authority, and control.

64.    As a direct and proximate result of Defendant's breaches of its duties of care,

Plaintiff has been harmed and numerous acts of sexual abuse were perpetrated on him, resulting in the injuries outlined above.

65.     Plaintiff is entitled to compensation for his injuries.

## COUNT II: NEGLIGENT HIRING, SUPERVISION, AND RETENTION

66.     Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

67.     Prior to the time Plaintiff was sexually and physically abused, Defendant knew or should have known that the residents and students at VisionQuest were vulnerable to, and potential victims of, sexual, physical, and/or emotional abuse.

68.     Prior to the time Plaintiff was sexually and physically abused, Defendant knew or should have known that living within a residential juvenile care facility and/or working at a residential juvenile care facility was an enticing location and/or profession for sexual predators and those seeking to abuse and exploit children.

69.     At all relevant times when the sexual and physical abuse of Plaintiff took place, the staff, employees, and others working at VisionQuest under its supervision, authority, and control, were under the supervision and control of the Defendant, either directly or indirectly.

70.     Defendant knew that the staff, employees, and others working at VisionQuest under its supervision, authority, and control, would have regular access to the young and vulnerable students and residents of VisionQuest.

71.     Defendant owed a duty to exercise reasonable care in the hiring, assignment, control, selection, supervision, and/or retention of staff, teachers, nurses, counselors, employees, agents, servants, and/or representatives residing in, employed by, and/or affiliated with Defendant, and specifically, a duty to be on the lookout for pedophiles, sexual predators, and those seeking to abuse and exploit the young and vulnerable students and residents of

VisionQuest.

72.    Defendant breached these duties through their acts and omissions, including but not limited to:

      a.   allowing, authorizing, or turning a blind eye to a culture of sexual and physical abuse at VisionQuest;

      b.   failing to properly screen staff members, teachers, nurses, counselors, employees, agents, and servants before placing them in close contact with the young and vulnerable residents and students at VisionQuest;

      c.   failing to adequately supervise staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

      d.   failing to monitor staff members, teachers, nurses, counselors, employees, agents, and servants to prevent sexual and physical abuse;

      e.   failing to establish, implement, and maintain proper and effective policies to for adequate observation, management, oversight, and supervision of the staff, employees, and others working at VisionQuest under its supervision authority, and control; and

      f.   failing to prevent serious and lasting psychological, physical, sexual, and emotional harm to Plaintiff while at VisionQuest.

73.    Defendant knew or should have known of the necessity of supervising, monitoring, and controlling their employees, staff, and others working at VisionQuest under its supervision, authority, and control, to ensure the safety and protection of the residents and students at VisionQuest.

74.    Defendant also knew or should have known the risk that employees, staff, and others working at VisionQuest under its supervision, authority, and control, presented to the students and residents of VisionQuest, where they had a propensity to commit criminal acts and that their close proximity to the students and residents of VisionQuest placed the children at a risk of harm and where harm actually did occur.

75.    The sexual and physical abuse of Plaintiff took place by employees, staff members, and others working at VisionQuest under its supervision, authority, and control, and

acting in the course and scope of their authority with the Defendant and/or accomplished the abuse based on the actual or apparent authority given to them by the Defendant.

76.     The sexual and physical abuse to which Plaintiff was subjected was committed on the premises of VisionQuest.

77.     Defendant failed to exercise ordinary care in hiring, supervising, and retaining the staff and employees at VisionQuest, negligently and recklessly causing harm to Plaintiff.

78.     Defendant failed to prevent foreseeable misconduct of the staff, employees, and others working at VisionQuest under its supervision, authority, and control, which resulted in harm to Plaintiff.

79.     As a direct and proximate result of Defendant's breaches of its duties of care, Plaintiff has been harmed and numerous acts of sexual abuse were perpetrated on him, resulting in the injuries outlined above.

80.     Plaintiff is entitled to compensation for his injuries.

**COUNT III: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

81.     Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

82.     At all relevant times, Defendant owed Plaintiff a duty to maintain a safe environment with adequate protection, supervision, and care while Plaintiff was in Defendant's care at custody at VisionQuest.

83.     As a result of the sexual and physical abuse committed by the employees, staff, and others working at VisionQuest under its supervision, authority, and control, Plaintiff suffered extreme and severe emotional distress.

84.     The emotional distress included, but was not limited to, horror, pain, anxiety, worry, post-traumatic stress, humiliation, embarrassment, shock, shame, feelings of

powerlessness, anger, aggression, fear and mistrust of authority, stress, difficulty sleeping, nightmares, night sweats, hypervigilance, depression, emotional withdrawal, and difficulty coping with daily life.

85.     To this day Plaintiff continues to struggle from and deal with his severe emotional distress.

86.     Defendant's negligence was the proximate cause of Plaintiff's severe emotional distress.

87.     Plaintiff is entitled to compensation for his injuries.

## COUNT IV: GROSS NEGLIGENCE

88.     Plaintiff incorporates by reference each allegation set forth in preceding paragraphs as if fully stated herein.

89.     Defendant was grossly negligent under the facts alleged herein because Defendant acted with complete disregard of the rights, safety, and well-being of Plaintiff.

90.     As a direct and proximate result of Defendant's gross negligence, Plaintiff has been harmed and numerous acts of sexual and physical abuse were perpetrated on him, resulting in the injuries outlined above.

91.     Plaintiff is entitled to compensation for his injuries, including punitive damages.

## COUNT V: BREACH OF FIDUCIARTY DUTY

92.     Plaintiff incorporates by reference every allegation set forth in preceding paragraphs as if fully stated herein.

93.     Defendant, as owner, operator, and supervisor of residential juvenile care facilities owed Plaintiff, and others committed to their care, a special duty of care. This included the duty to protect them from staff, teachers, nurses, employees, agents, servants, and representatives hired, supervised, retained, and otherwise controlled by Defendant.

94.     Defendant breached its fiduciary duties for the reasons alleged herein.

95.     As a direct and proximate result of Defendant's breaches of its fiduciary duty, Plaintiff has been harmed and numerous acts of sexual abuse were perpetrated on him, resulting in the injuries outlined above.

96.     Plaintiff is entitled to compensation for his injuries.

## VI.     PRAYER FOR RELIEF

WHEREFORE, Plaintiff Anthony Gunn demands judgment against Defendant in an amount in excess of $75,000.00, exclusive of prejudgment interest, costs and damages for pre-judgment delay, punitive damages, and such other legal and equitable relief as the Court deems just and appropriate.

## VII.     JURY DEMAND

Plaintiff demands a trial by jury.

Dated: August 1, 2023                              Respectfully submitted,

                                                  **FEGAN SCOTT LLC**

                                                  By: */s/ Lynn A. Ellenberger*
                                                  Lynn A. Ellenberger
                                                  lynn@feganscott.com
                                                  PA # 59896
                                                  Lisa H. Fish
                                                  lisa@feganscott.com
                                                  PA # 328646
                                                  500 Grant St., Suite 2900
                                                  Pittsburgh, PA 15219
                                                  Telephone: (412) 346-4104
                                                  Facsimile: (312) 264-0100