IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ANTHONY GUNN, | ) | |
| Plaintiff | ) | C.A. No. 23-225 Erie |
| | ) | |
| v. | ) | |
| | ) | District Judge Susan Paradise Baxter |
| VISIONQUEST NATIONAL LTD, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

### I.      INTRODUCTION

#### A.      Relevant Procedural History

On August 1, 2023, Plaintiff Anthony Gunn, an adult resident of Centre County, Pennsylvania, initiated this action by filing a complaint against Defendant VisionQuest National Ltd., a business organization incorporated and having its principal place of business in the State of Arizona. Plaintiff subsequently filed an amended complaint against Defendant on August 23, 2023 [ECF No. 9], which is the operative pleading in this case.

At all times relevant hereto, Defendant owned and operated a residential facility for youth adjudicated delinquents in Franklin, Pennsylvania. Plaintiff alleges that he was placed in Defendant's facility when he was 14 years of age and "endured sexual and physical abuse at the hands of VisionQuest staff." (ECF No. 9, at ¶ 3). As a result of the alleged sexual and physical abuse, Plaintiff asserts five causes of action: (1) Count I – negligence; (2) Count II – negligent hiring, supervision, and retention; (3) Count III – negligent infliction of emotional distress; (4) Count IV – gross negligence; and (5) Count V – breach of fiduciary duty. As relief for his claims, Plaintiff seeks monetary damages.

Now pending before this Court is Defendant's partial motion to dismiss and motion to strike [ECF No. 11]. Specifically. Defendant moves for the dismissal of all allegations, claims, and references to physical abuse in Plaintiff's amended complaint,[1] as well as Plaintiff's claim of gross negligence at Count IV, for failure to state a claim upon which relief may be granted. In addition, Defendant moves to strike paragraphs 35-43 of Plaintiff's amended complaint as redundant, immaterial, impertinent, or scandalous. Plaintiff has since filed a brief in opposition to Defendant's motion [ECF No. 14], to which Defendant has filed a reply brief [ECF No. 15]. This matter is now ripe for consideration.

**B.** **Relevant Factual History**[2]

In July or August 2008, when he was 14 years old, Plaintiff was adjudicated delinquent by the Court of Common Pleas of Erie County, Pennsylvania and committed to Defendant's facility in Franklin, Pennsylvania, where he remained for approximately thirty days (ECF No. 9, at ¶ 14). While there, Plaintiff alleges that he was "physically and sexually abused by employees, staff members, and others working at VisionQuest … [and] was also physically abused by VisionQuest students at the urging of VisionQuest employees and staff members." (Id. at ¶ 15).

In particular, Plaintiff alleges that on one occasion he and another student were forced to stand outside all night in their underwear in the pouring rain as punishment for throwing a football to one another in their room when they should have been sleeping. (Id. at ¶ 16). As a result of this incident, Plaintiff became sick and was sent to the infirmary where he was

---

1

In particular, Defendant moves to dismiss all references to physical abuse in paragraphs 2, 3, 4, Section IV(B), 15, 16, 17, 18, 19, 26, 27, 28, 29, 30, 31, 32, 33, Section IV(C), 34, 44, 47, Section IV(F), 57, 58, 59, 60, 61, 66(a), 66(b), 66(c), 66(e), 66(f), 66(i), 66(k), 72, 73, 74, 77(a), 77(c), 77(d), 80, 81, 88, and 95.

2

The Court accepts as true all well-pleaded allegations of the amended complaint, as is required for purposes of determining Defendant's motion.

examined by a nurse who "began sexually assaulting by grabbing his testicles while flirting with him." (Id. at ¶¶ 19-21). Plaintiff was later called for a follow-up visit with the same nurse who commented about his lack of sexual experience and then kissed him while grabbing his genitals. (Id. at ¶ 22). The same nurse sexually assaulted Plaintiff several times thereafter, allowing him to fondle her breasts and giving him oral sex on one occasion. (Id. at ¶ 23).

In addition to being sexually abused by the nurse, Plaintiff alleges that staff provoked other students to physically abuse him. (Id. at ¶ 26). Once, Plaintiff was beaten by another student in the bathroom at the behest of a staff member. (Id. at ¶¶ 27-29). On another occasion, Plaintiff was punched and kicked by another student during a card game, while staff members stood by and watched without intervening. (Id. at ¶ 31). On a third occasion, Plaintiff slipped on some rocks and fell while "slap boxing" with another student and received a "gash" on his left eye, for which staff members would not allow him to seek medical attention. (Id. at ¶ 32). Then, two days before Plaintiff left the facility, staff members forced him to fight another student, who was a skilled boxer, in a "ring" formed on the same rocks where he suffered his gash, which resulted in Plaintiff suffering serious injury. (Id. at ¶ 33).

As a result of the abuse Plaintiff suffered at Defendant's facility, Plaintiff suffers from several life-long mental health issues, panic attacks, night terrors, and drug addiction, and has been incarcerated most of his life. (Id. at ¶¶ 44-49).

## II.   DISCUSSION

### A.   Claims of Non-Sexual Physical and/or Emotional Abuse

Defendant seeks dismissal of Plaintiff's claims of non-sexual physical and/or emotional abuse, arguing that such claims are barred by the applicable statute of limitations. For the same

reason, Defendant also asks that all allegations of non-sexual physical and/or emotional abuse be dismissed from the amended complaint.

It is well-settled that a federal court must apply the substantive laws of its forum state in diversity cases, including the state's statute of limitations. Lafferty v. St. Riel, 495 F.3d 72, 76 (3d Cir. 2007) (citations omitted). Thus, Pennsylvania's statute of limitations applies here. In particular, 42 Pa. C.S. § 5524 sets forth various causes of action that must be commenced within two years of their occurrence, or within two years of the plaintiff's eighteenth birthday, whichever is later. Among such causes of action are "assault" (i.e., emotional abuse") and "battery" (i.e., non-sexual physical abuse). 42 Pa. C.S. § 5524(1).

A claim is subject to dismissal for failure to state a claim on statute of limitations grounds "only when the statute of limitations defense is apparent on the face of the complaint." Wisniewski v. Fisher, 857 F.3d 153, 157 (3d Cir. 2017), citing Schmidt v. Skolas, 770 F.3d 241, 249 (3d Cir. 2014). Here, the amended complaint plainly states that Plaintiff was 14 years of age when the alleged incidents occurred in 2008, which means that Plaintiff was 18 years of age in 2012. Thus, barring the application of any exceptions tolling the limitations period, Plaintiff's claims for non-sexual physical and/or emotional abuse were required to have been filed sometime in 2014, within two years of Plaintiff's eighteenth birthday. Instead, the instant lawsuit was not filed until August 1, 2023, approximately nine years after the expiration of the statute of limitations applicable to such claims. Consequently, Defendant asserts that all allegations, claims, and references to non-sexual physical and/or emotional abuse in Plaintiff's amended complaint are time-barred and must be dismissed and/or stricken.

Plaintiff counters that the running of the limitations period with regard to such claims was delayed by the application of various accrual and tolling doctrines, namely the discovery rule,

fraudulent concealment, and/or equitable tolling. The application of each of these tolling doctrines will be addressed in turn.

### 1.        The Discovery Rule

The discovery rule tolls the statute of limitations when an injury or its cause was not known or reasonably knowable "'despite the exercise of due diligence.'" Mest v. Cabot Corp., 449 F.3d 502, 510 (3d Cir. 2006), quoting Pocono Int'l Raceway v. Pocono Produce, Inc., 468 A.2d 468, 471 (Pa. 1983). Under the discovery rule, "even if a plaintiff suffers an injury, the statute of limitations does not begin to run until 'the plaintiff knows, or reasonably should know, (1) that he has been injured, and (2) that his injury has been caused by another party's conduct.'" Id., quoting Debiec v. Cabot Corp., 352 F.3d 117, 129 (3d Cir. 2003). Thus, "the discovery rule focuses not on 'the plaintiff's actual knowledge, but rather on whether the knowledge was known, or through the exercise of diligence, knowable to' the plaintiff." Mest, 449 F.3d at 511, quoting Bohus v. Beloff, 950 F.2d 919, 925 (3d Cir. 1991). A plaintiff is, therefore, obligated "to exercise reasonable diligence in ascertaining the existence of the injury and its cause." Bohus, 950 F.2d at 925 (internal quotation marks omitted)

Here, Plaintiff contends that, "[w]hile it is true that Plaintiff was aware of the acts of physical abuse when they happened, he was *not* aware that the abuse was not sanctioned by his juvenile commitment but, instead, an institutional problem about which [Defendant] knew." (ECF No. 14, at p. 7). Specifically, Plaintiff argues that, because of his young age at the time of the alleged physical abuse, he "believed that [Defendant's] physical abuse was a normal and acceptable practice" and "he didn't know any better" until "the end of 2021 and early 2022, when numerous lawsuits were filed against [Defendant] about widespread physical and sexual abuse at the Franklin facility." (Id. at p. 6). Thus, according to Plaintiff, his claims of physical

abuse did not accrue until he was put on notice of his right to assert such claims in or around the end of 2021. Plaintiff's argument is unavailing.

As noted above, under the discovery rule the statute of limitations begins to run "when the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim." Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth., 539 F.3d 199, 209 (3d Cir. 2008). Plaintiff's inability to  know of the injury must be "despite the exercise of reasonable diligence." Fine v. Checcio, 870 A.2d 850, 858 (Pa. 2005). "A plaintiff's ignorance regarding the full extent of his injury is irrelevant to the discovery rule's application, so long as the plaintiff discovers or should have discovered that he was injured." Stephens v. Clash, 796 F.3d 281, 288 (3d Cir. 2015), citing Kach v. Hose, 589 F.3d 626, 635 (3d Cir.2009) (statute of limitations begins to run "even though the full extent of the injury is not then known or predictable") (quoting Wallace v. Kato, 549 U.S. 384, 391 (2007). "Were it otherwise, the statute would begin to run only after a plaintiff became satisfied that he had been harmed enough, placing the supposed statute of repose in the sole hands of the party seeking relief." Wallace, 549 U.S. at 391.

"'The polestar of the Pennsylvania discovery rule is not a plaintiff's actual acquisition of knowledge but whether the information, through the exercise of due diligence, was knowable to the plaintiff. The failure to make inquiry when information is available is failure to exercise reasonable diligence as a matter of law.'" DiDomizio v. Jefferson Pulmonary Assoc., 280 A.3d 1039, 1046 (Pa. Super. 2022), quoting Borough of Mifflinburg v. Heim, 705 A.2d 456, 467 (Pa. Super. 1997), appeal denied, 794 A.2d 359 (Pa. 1999) (citation omitted). The Pennsylvania Supreme Court has recognized that inquiry notice "t[ies] commencement of the limitations period to actual or constructive knowledge of at least some form of significant harm and of a

factual cause linked to another's conduct, without the necessity of notice of the full extent of the injury, the fact of actual negligence, or precise cause." <u>Rice v. Diocese of Altoona-Johnstown</u>, 255 A.3d 237, 247 (Pa. 2021) (citation omitted).

In <u>Rice</u>, the plaintiff brought an action against the diocese for fraud and related claims arising from its protection of a priest who had sexually abused her twenty-five years earlier. The plaintiff argued that she had no way to know the diocese's role in the sexual assaults until proof of them and the diocese's knowledge thereof were ultimately revealed in a grand jury's subsequent findings that the diocese was aware for years of its clergy's criminal actions. Pennsylvania's Supreme Court rejected the plaintiff's argument, holding that the "inquiry notice approach to the discovery rule required [the plaintiff] to investigate the Diocese as a potential additional cause of her injuries during the limitations period," which began to run at the time of the last assault twenty-five years earlier. <u>Rice</u>, 255 A.2d at 255.

The <u>Rice</u> case is particularly instructive here, as Plaintiff is similarly asserting that he had no way of knowing that the physical abuse he suffered in 2008 was caused by "an institutional problem" about which Defendant was aware, but which only came to light when multiple lawsuits were filed against Defendant in late 2021 and early 2022. Yet, as in <u>Rice</u>, Plaintiff did not investigate Defendant's culpability in the physical abuse he suffered, alleging that he simply "did not know any better." In short, Plaintiff failed to exercise the reasonable diligence necessary to invoke the discovery rule.[3]

---

[3] Plaintiff attempts to distinguish the present case from <u>Rice</u>, arguing that "the sexual abuse [in <u>Rice</u>] was distinctly different from the physical abuse at issue here ... [because] ... there could be no argument in <u>Rice</u> that the sexual abuse was in any way appropriate... [while here] the physical abuse could have been viewed as sanctioned and part of Plaintiff's juvenile placement." (ECF No. 14, at p. 8). In particular, Plaintiff notes that he "specifically alleges that physical 'confrontations' *between VisionQuest staff members and students* were a long-standing institutional practice." (<u>Id.</u>) (emphasis added). However, this is not the type of physical abuse alleged by Plaintiff. Rather, Plaintiff describes multiple physical attacks by other students allegedly arranged, encouraged, and or condoned by

### 2.      Fraudulent Concealment

"Pennsylvania's fraudulent concealment doctrine tolls the statute of limitations where through fraud or concealment the defendant causes the plaintiff to relax vigilance or deviate from the right of inquiry." Mest, 449 F.3d at 516 (internal quotation omitted). "[T]he fraudulent concealment doctrine does not toll the statute of limitations where the plaintiff knew or should have known of his claim despite the defendant's misrepresentation or omission." Id., citing Bohus, 950 A,2d at 925-26. "Moreover, in order for fraudulent concealment to toll the statute of limitations, the defendant must have committed some affirmative independent act of concealment upon which the plaintiffs justifiably relied." Kingston Cole Co. v. Felton Mining Co., Inc., 690 A.2d 284, 291 (Pa. Super. 1997) (citation omitted).

Here, Plaintiff has not alleged any affirmative act of concealment on the part of Defendant that caused him to relax his vigilance or deviate from the right of inquiry. Instead, Plaintiff argues that Defendant's alleged "code of silence" was the act of fraudulent concealment; however, the Pennsylvania Supreme Court has expressly rejected this argument. See, Rice, 255 A.3d at 253 (finding that the defendant's failure to speak "does not trump a plaintiff's due diligence obligation to investigate other possible causes of [his] known injury"). See also Meehan v. Archdiocese of Philadelphia, 870 A.2d 912, 922-23 (Pa. Super. 2005) (rejecting application of fraudulent concealment doctrine based on the defendant's silence because "[t]he plaintiffs do not allege that the defendant's silence misled them into believing that the alleged sexual abuse did not occur, that it had not been committed by the priests or nun, or that it had not resulted in injury...."); Fox v. Lackawanna County, 2017 WL 5007905, at *8

---

staff members, the last of which was a one-sided boxing match in a "ring" created by staff on a bed of rocks. It is simply incredulous that such physical abuse at the hands of other students, condoned or otherwise, would be viewed as "appropriate," sanctioned conduct.

(E.D. Pa. Nov. 2, 2017) (finding that defendant's purported cover-up of sexual abuse by its officers was not an affirmative act constituting fraudulent concealment); <u>Leonard v. City of Pittsburgh</u>, 2013 WL 4541727, at *8 (W.D. Pa. Aug. 27, 2013) (finding that defendant's failure to address officer's misconduct and to remain silent did not amount to fraudulent concealment, because plaintiff "d[id] not point to any affirmative act of concealment on the part of the [defendant] that caused her to relax her vigilance as to her claims").

Moreover, "the standard applied under the discovery rule requiring that a plaintiff exercise reasonable diligence to discover both an injury and its causes also applies when fraudulent concealment is the asserted basis for tolling the statute of limitations." <u>Rice</u>, 255 A.2d at 252, <u>citing Fine</u>, 870 A.2d at 860-61. Thus, Plaintiff's failure to exercise reasonable diligence to investigate his claims against Defendant within the applicable limitations period also precludes his invocation of the fraudulent concealment doctrine.

### <u>3.</u>    <u>Equitable Tolling</u>

"It is well established that a court may rescue a claim otherwise barred as untimely by a statute of limitations when a plaintiff [shows he] has been prevented from filing in a timely manner due to sufficiently inequitable circumstances." <u>D.J.S.-W., by Stewart v. United States</u>, 962 F.3d 745, 749-50 (3d Cir. 2020) (internal quotations and citations omitted). Equitable tolling is "an extraordinary remedy and is proper only when the principles of equity would make [the] rigid application [of a limitation period] unfair." <u>Id</u>. at 750 (internal quotations and citations omitted). The Third Circuit has generally recognized "three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting … [his] rights; or (3) where the plaintiff

has timely asserted … [his] rights mistakenly in the wrong forum." Id., quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1387 (3d Cir. 1994).

Importantly, however, "a litigant 'will not receive the benefit of' tolling in any of these situations 'unless [he] exercised due diligence in pursuing and preserving [his] claim.'" Id., quoting Santos ex re. Beato v. United States, 559 F.3d 189, 197 (3d Cir. 2009). Here, the Court has already determined that Plaintiff failed to exercise due diligence in pursuing his claims of physical abuse against Defendant within the applicable limitations period. Thus, he is precluded from receiving the benefit of equitable tolling.

Because none of the above tolling doctrines are applicable here, Plaintiff's claims of non-sexual physical and/or emotional abuse are barred by the statute of limitations and will be dismissed. In addition, all references to and allegations of non-sexual physical and/or emotional abuse will be dismissed and/or stricken from the amended complaint.

### B.   Count IV – Gross Negligence

Defendant has moved to dismiss Plaintiff's claim of gross negligence, arguing that, under Pennsylvania law, gross negligence is not an independent cause of action. The Court agrees.

In Monroe v. CBH20, LP, 286 A.3d 785, 799 (Pa. Super. 2022), the Pennsylvania Superior Court expressly recognized that, "gross negligence and recklessness are states of mind; they are forms of negligence, not independent causes of action." This fact has been uniformly recognized by courts within the Third Circuit. See, e.g., Spence v. ESAB Group, Inc., 623 F.3d 212, 215 n.2 (3d Cir. 2010) ("there is no separate cause of action under Pennsylvania law for gross negligence"); Kevin C. v. Foundations Behavioral Health, 2023 WL 8480068, at *5 (E.D. Pa. Dec. 7, 2023) ("under Pennsylvania law, negligence, gross negligence, and recklessness are not separate causes of action, but rather different 'degree[s] of deviation from the standard of

care' that fall under a single cause of action") (internal quotation and citation omitted); <u>Hunter v. Squirrel Hill Assoc., L.P.</u>, 413 F.Supp.2d 517, 520 n.2 (E.D. Pa. 2005) (in Pennsylvania, "the term "gross negligence" refers only to a heightened standard of care, not to a cause of action distinct from ordinary negligence") (internal quotations and citation omitted).

In opposition, Plaintiff asserts that the gross negligence is, in fact, a viable cause of action in Pennsylvania, based upon the Pennsylvania Supreme Court's decision in <u>Feleccia v. Lackawanna Coll.</u>, 215 A.3d 3 (Pa. 2019). However, as Defendant points out, Plaintiff's reliance on <u>Feleccia</u> in this regard is misplaced. In <u>Feleccia,</u> the court merely refined the definition of "gross negligence" for purposes of determining the enforceability of an athlete's waiver of liability. Notably, the court did not establish the viability of gross negligence as an independent cause of action, nor did it even broach the subject. As Defendant cogently observes, this would explain why the Pennsylvania Superior Court was able to declare three years later in <u>Monroe</u> that gross negligence is not an independent cause of action in Pennsylvania. Thus, Plaintiff's claim of gross negligence at Count IV of the amended complaint will be dismissed.

### C.      **Motion to Strike**

Under Federal Rule of Civil Procedure 12(f), courts may "strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f); <u>see</u>, <u>e.g.</u>, <u>Berezansky v. CNB Bank</u>, 2018 WL 461245, at *2 (W.D. Pa. Jan. 17, 2018); <u>Sampath v. Concurrent Technologies Corp.</u>, 2006 WL 1207961, at *3 (W.D. Pa. May 3, 2006). "Immaterial" allegations are those that have no essential or important relationship to the claim for relief. <u>Deltondo v. School District of Pittsburgh</u>, 2023 WL 1108389 (W.D. Pa. Jan. 30, 2023), <u>citing</u> <u>Conklin v. Anthou</u>, 2011 WL 1303299, at *1 (M.D. Pa. Apr. 5, 2011). "Impertinent" allegations consist of "'statements that do not pertain, and are not necessary, to the issues in question.'" <u>Id.</u>,

quoting In re Shannopin Mining Co., 2002 WL 31002883, at *28 (W.D. Pa. Jul. 25, 2002).

"Scandalous" allegations "improperly cast[ ] a derogatory light on someone, most typically on a

party to the action." Id. (citation omitted).

The purpose of a motion to strike "is to clean up the pleadings, streamline litigation, and

avoid unnecessary forays into immaterial matters." Tennis v. Ford Motor Co., 730 F.Supp.2d

437, 443 (W.D. Pa. 2010). "[W]hile such motions are not favored, courts possess considerable

discretion in their weighing, particularly where the challenged allegations have no possible

relation to the controversy and may cause prejudice to one of the parties (with the latter being an

important consideration)." Morgan v. Noss, 2024 WL 2819139, at *5 (W.D. Pa. Apr. 4, 2024)

(citations omitted). "A court may also properly strike allegations which may 'confuse the issues

in the case.'" Id., quoting Fiorentino v. Cabot Oil & Gas Corp., 750 F. Supp. 2d 506, 509 (M.D.

Pa. 2010).

Here, Defendant has moved to strike paragraphs 35-43 of Plaintiff's amended complaint.

In particular, paragraph 35 alleges that Defendant's license to operate in the state of New Mexico

was canceled in 1984, "in part because of child abuse charges." Paragraph 36 references a study

completed by Rand Corporation in November 1987 that memorialized "controversial physical

'confrontations' by [Defendant's] staff" and "several child-abuse complaints lodged against

[Defendant's] staff members." Paragraph 37 alleges that, between 1995 and 1998, Defendant

"had 11 charges of abuse substantiated against its programs," including the hiring of "a twice-

convicted child rapist" and "a supervisor knocking a girl to the ground and holding her down by

her throat." Paragraph 38 references a March 13, 1998 news article that allegedly "confirmed

[Defendant's] controversial practices where '[s]taff members are often confrontational, shouting

at youths nose to nose and sometimes grabbing them.'" Paragraph 39 references another article,

dated August 6, 1998, which reported that "physical restraint, and other forms of physical contact, are essential to Defendant's program." Paragraph 40 alleges that students at Defendant's North Philadelphia shelter were "man-handled," and that one child was put "in a restraint" and "kicked a dent in the wall as he resisted." Paragraph 41-42 allege that in April 2013, at the same North Philadelphia shelter, two staff members "cursed at the youth in their care;" in August of 2013, eight staff members at that same shelter had not been certified in CPR or first aid; and in 2014 and 2015, a staff member at that shelter was working without child-abuse clearance. And paragraph 43 alleges that Defendant's Franklin facility, where Plaintiff was housed in 2008, was ultimately closed in 2018 due to "safety concerns."

The Court's consideration of Defendant's request to have these paragraphs stricken is informed by two important constraints. First, Plaintiff's claims arise from events that allegedly occurred during his commitment at Defendant's Franklin, Pennsylvania facility in July or August 2008, which lasted approximately thirty days. Second, because the Court has already decided to dismiss Plaintiff's claims of non-sexual physical and/or emotional abuse, and to strike all related allegations, as time-barred, the only cognizable claims remaining are those that arise from Plaintiff's allegations of sexual abuse. Given these two constraints, the Court makes the following findings.

The allegations of paragraphs 35-39, dealing with alleged abuse and practices that reportedly occurred in Defendant's facilities other than its Franklin, Pennsylvania facility, at least ten years, and as many as 24 years, before the alleged incidents at issue in this case, are far too attenuated to have any material value and are more likely to cause prejudice to Defendant and to confuse the issues in this case. Moreover, these paragraphs primarily allege non-sexual

13

physical and/or emotional abuse, which are not relevant to the claims of sexual abuse remaining in this case. As a result, paragraphs 35-39 will be stricken from the amended complaint.

Similarly, the allegations of paragraphs 40-42 are both immaterial and impertinent to the issues remaining in this case. Specifically, all of the incidents and/or circumstances alleged in these paragraphs occurred at least five years after the incidents alleged in this case (2013-2015), at a facility different from the one involved in this case (New Directions Shelter in North Philadelphia), and primarily implicate non-sexual and/or emotional abuse, which is no longer at issue in this case. Thus, the allegations of these paragraphs are more likely to confuse the issues remaining in this case and may result in undue prejudice to Defendant. Consequently, paragraphs 40-42 of the amended complaint will also be stricken from the amended complaint.

Paragraph 43, however, will not be stricken, as it is neither immaterial nor impertinent to the issues in this case, and cannot be considered scandalous toward Defendant, since it merely recounts the fact that Defendant's Franklin facility was ultimately closed in 2018 due to safety concerns.

An appropriate Order follows.